**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:25-CV-00192-CHL**

**AUSTIN W.,[1]** **Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,[2]** **Defendant.**

# MEMORANDUM OPINION AND ORDER

Before the Court is the Complaint filed by Plaintiff, Austin W. ("Claimant"). Claimant seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner"). (DN 1.) Claimant and the Commissioner each filed a Fact and Law Summary and/or supporting brief, and Claimant also filed a reply. (DNs 11, 11-1, 13, 16.) The Parties have consented to the jurisdiction of a Magistrate Judge to enter judgment in this case with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 18.) Therefore, this matter is ripe for review.

For the reasons set forth below, the final decision of the Commissioner is **AFFIRMED**.

## I. BACKGROUND

On September 13, 2022, Claimant applied for child's insurance benefits under Title II ("CIB"), and on November 4, 2022, Claimant applied for supplemental security income under Title XVI ("SSI"). (R. at 17, 56, 65, 74-76, 85, 94-95, 191-217.) His applications alleged disability beginning on May 1, 2022, due to bipolar disorder, depression, anxiety, paranoia, posttraumatic stress disorder ("PTSD"), asthma, and agoraphobia. (*Id.* at 17, 56, 65, 74-76, 85, 94-95, 247.)

---

[1] Pursuant to General Order 23-02, the Plaintiff in this case is identified and referenced solely by first name and last initial.

[2] As Frank Bisignano is now the Commissioner of Social Security, he is automatically substituted as the Defendant in this matter pursuant to Fed. R. Civ. P. 25(d). The Clerk is directed to change the case caption to reflect the substitution.

Claimant's applications were denied initially and again on reconsideration. (*Id.* at 102-09, 111-16.)

At Claimant's request, Administrative Law Judge ("ALJ") Michael D. Harbart ("the ALJ") conducted a hearing on Claimant's applications on February 21, 2024. (*Id.* at 37-55, 117.) Claimant attended the hearing by telephone with his non-attorney representative. (*Id.* at 39-40, 184.) An impartial vocational expert also participated in the hearing. (*Id.* at 39.) During the hearing, Claimant testified to the following. He sometimes does not eat based on his mood. (*Id.* at 42.) He had a mental breakdown and dropped out of school in the ninth grade. (*Id.* at 42.) His anxiety prevents him from driving, and he does not have a driver's license. (*Id.* at 43.) He is afraid to leave his house and go outside; he gets halfway out then becomes anxious and hyperventilates. (*Id.* at 44.) He has multiple mental impairments that "all go hand in hand" and fuel each other. (*Id.*) He has been dealing with these same issues since he was around thirteen. (*Id.* at 45.) His dad committed suicide when Claimant was five or six and when Claimant found out, he tried to kill himself; he tried again when he was eight. (*Id.*) He started showing signs of both his bipolar and anxiety disorders at a young age. (*Id.*) He takes medications that help some, but they make him sleepy. (*Id.* at 46, 49-50.) He watches television and plays computer games but can only do those things for approximately thirty minutes at a time. (*Id.* at 46-48.) He cannot remember to do household chores without reminders. (*Id.* at 48.)

The ALJ issued an unfavorable decision on April 5, 2024. (*Id.* at 14-36.) Applying the five-step sequential evaluation process promulgated by the Commissioner to determine whether an individual is disabled, the ALJ made the following findings. First, the Claimant had not engaged in substantial gainful activity since May 1, 2022, his alleged onset date, and as is relevant to his CIB claim, Claimant had not attained age twenty-two as of his alleged onset date. (*Id.* at

19.) Second, Claimant had the following severe impairments: anxiety, PTSD, agoraphobia, bipolar disorder, and learning disorder. (*Id.* at 20.) Third, Claimant did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id.*) Fourth, Claimant had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with certain non-exertional limitations; the ALJ explained, "The claimant is limited to simple, routine type work. He would not work in a production or pace type job. He would work in a low stress job defined as having only occasional decision making. He could have occasional interaction with supervisors, coworkers, and the public." (*Id.* at 21.) Additionally at step four, the ALJ found that Claimant had no past relevant work. (*Id.* at 28.) Fifth, and finally, considering Claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Claimant could perform. (*Id.*) The ALJ concluded that Claimant was not under a disability from May 1, 2022, through the date of his decision. (*Id.* at 29.)

Claimant subsequently requested an appeal to the Appeals Council, which denied his request for review on February 24, 2025. (*Id.* at 1-6, 188-89.) At that point, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 422.210(a) (2025); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision). Pursuant to 20 C.F.R. § 422.210(c), Claimant is presumed to have received that decision five days later. 20 C.F.R. § 422.210(c). Accordingly, Claimant timely filed this action on April 8, 2025. (DN 1.)

## II. DISCUSSION

The Social Security Act authorizes payments of SSI to persons with disabilities. *See* 42 U.S.C. §§ 1381-1383f. An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a) (2025). The Social Security Act also authorizes payments of CIB to children of insured wage earners under certain circumstances including when a child of wage earner is or was under a disability before he or she attained age twenty-two. 42 U.S.C. § 402(d); 20 C.F.R. § 404.350 (2025). To be entitled to benefits on the basis of disability, in addition to the other requirements of the act, a child must also prove that he or she is disabled as defined above. 42 U.S.C. § 402(d)(1)(B)(ii) (adopting the definition of disability set forth in 42 U.S.C. § 423(d)(1)(A), which parallels the language of 42 U.S.C. § 1382c(a)(3)(A)).

**A. Standard of Review**

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the Court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the

Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

**B. Five-Step Sequential Evaluation Process for Evaluating Disability**

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating whether an individual is disabled. 20 C.F.R. §§ 404.1520, 416.920 (2025). This same process applies to the evaluation of disability for CIB claims under Title II. 42 U.S.C. § 402(d)(1)(B)(ii) (incorporating the same definition of disability under 42 U.S.C. § 423(d) that the regulations in 20 C.F.R. Part 404 are designed to govern). In summary, the evaluation process proceeds as follows:

(1) Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

(2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[3] and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

(3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

(4) Does the claimant have the RFC to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

(5) Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[3] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1509, 416.909 (2025).

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec*., 203 F.3d 388, 392 (6th Cir. 1999).

**C. Claimant's Contentions**

Claimant's brief lists his argument as being that the ALJ failed to account for the total limiting effects of his impairments, but his arguments really relate to the ALJ's consideration of the opinion evidence. Specifically, he challenged the ALJ's assessment of the opinions of Marian A. McKay, Ed.D., APRN, PMHNP-BC, ("NP McKay"); Michael E. Whitten, Ph.D., ("Dr. Whitten"); and Jennifer Fishkoff, Psy.D., ("Dr. Fishkoff") as being insufficient to comport with 20 C.F.R. §§ 404.1520c, 416.920c and unsupported by substantial evidence.[4] (DN 11, at PageID # 825-35; DN 16, at PageID # 860-66.) He argued that NP McKay's, Dr. Whitten's, and Dr. Fishkoff's opinions actually supported greater limitations than those encompassed in the ALJ's RFC determination and supported that he was incapable of performing the basic mental demands of unskilled work. (DN 11, at PageID # 824-25.) The Court will address these arguments below.

**1. Opinion Evidence**

The applicable regulations set forth specific rules an ALJ must follow with regard to opinion evidence. Pursuant to 20 C.F.R. §§ 404.1520c, 416.920c, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)" in the

[4] Claimant refers to Dr. Whitten's opinion as being the opinion of "Dr. Whitten and Mr. Jackson." (DN 11, at PageID # 814.) While the report is signed by both Dr. Whitten and Calvin C. Jackson, MA, "Licensed Psychological Associate," the Court will refer to the report merely as Dr. Whitten's report since he was the presiding psychologist. (R. at 598.)

record regardless of its source.[5] 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2025). Instead, an ALJ will evaluate the "persuasiveness" of a medical opinion by reference to the five factors listed in the regulation: supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 404.1520c(a), (c); 20 C.F.R. § 416.920c(a), (c). The regulations provide that the two most important factors are supportability and consistency and that an ALJ is required to "explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. § 404.1520c(a), (b)(2); 20 C.F.R. § 416.920c(a), (b)(2). However, the regulations state that "it is not administratively feasible for [an ALJ] to articulate in each determination or decision how [he or she] considered all of the factors for all of the medical opinions . . . in [the] case record"; thus, an ALJ is not required to explicitly discuss how he or she weighed the factors of relationship with the claimant,[6] specialization, and other factors.[7] 20 C.F.R. §§ 404.1520c(b)(1)-(2), 416.920c(b)(1)-(2). Where two medical opinions reach different conclusions but are "equally well-supported . . . and consistent with the record," an ALJ is required to state how he or she considered the other "most persuasive" factors in making his or her decision. 20 C.F.R. § 404.1520c(b)(3), 416.920c(b)(3).

The Sixth Circuit has not elucidated a specific standard aside from the text of the regulation to determine whether an ALJ sufficiently complied with the requirement to "articulate how [he or she] considered the medical opinions" and "explain how [he or she] considered the supportability

---

[5] This language indicates that the new regulation has done away with the controlling weight and other old rules regarding the weight to be ascribed to medical opinions. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (2025).

[6] In assessing this factor, the regulations require an ALJ to consider the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. §§ 404.1520c(c)(3), 416.920c(c)(3).

[7] The regulations provide that an ALJ will consider any "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(c)(5), 416.920c(c)(5). These factors include, but are not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim," "whether new evidence [ ] receive[d] after the medical source made his or her medical opinion . . . makes the medical opinion . . . more or less persuasive," and whether the medical source has "an understanding of [the] disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c)(5), 416.920c(c)(5).

and consistency factors" under the regulations. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). *But see Gregory v. Comm'r of Soc. Sec.,* No. 26-5022, 2026 WL 1763752, at *2 (6th Cir. June 18, 2026) (quoting in part 20 C.F.R § 404.1520c(b)(2)) ("To pass muster, the ALJ need only explain 'how [he] considered the supportability and consistency factors for a medical source's medical opinions.' "); *Adams v. Comm'r of Soc. Sec.*, No. 23-3284, 2023 WL 6366106, at *2 (6th Cir. Sept. 28, 2023) (noting that the new regulations "substantially reduce[] the ALJ's obligation to explain the basis for his or her assessment of medical opinions"); *Deaner v. Comm'r of Soc. Sec.*, 840 F. App'x 813, 822 (6th Cir. 2020) (White, J. dissenting) (applying the new regulations and finding that "[t]he ALJ did not clearly analyze the supportability and consistency of the state consultants' assessments, as compared to other evidence in the record which supported [the plaintiff]'s claims"). However, district courts applying the new regulations within this circuit consistently apply the articulation requirement literally. *See, e.g.*, *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. 2021) ("The administrative adjudicator has the obligation in the first instance to show his or her work, i.e., to explain in detail *how the factors actually were applied* in each case, to each medical source. Resorting to boilerplate language to support a finding of unpersuasiveness does not satisfy that obligation." (emphasis in original)); *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021) ("Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of [her] reasoning."); *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20-CV-1364, 2021 WL 119287, at *1 (N.D. Ohio Jan. 13, 2021) (finding that "the [new] regulations do require that the

ALJ clearly explain his consideration of the opinions and identify the evidence supporting his conclusions").

The Court will address Claimant's arguments regarding these standards and the opinions of NP McKay, Dr. Whitten, and Dr. Fishkoff separately below.

**a) NP McKay**

NP McKay was Claimant's treatment provider and issued three opinions in the record, two narrative statements and one check-box form opinion. (R. at 644-45, 646-52, 678.) The narrative statements were largely conclusory summaries of Claimant's diagnoses and symptoms, but the check-box form opinion, executed in October 2023, encompassed her opinion as to Claimant's functional limitations. She noted Claimant's diagnoses of bipolar disorder, generalized anxiety disorder, and agoraphobia and highlighted clinical findings demonstrating the severity of Claimant's impairments including "depressed & anxious mood, blunted affect, paranoid thought contents, problems with memory, sleep impaired, [and] appetite impaired." (*Id.* at 647.) She opined that Claimant had marked limitations on his abilities to understand, remember, and apply information; interact with others; concentrate, persist, and maintain pace; and adapt or mange himself. (*Id.* at 651.) She indicated that Claimant's impairments would cause more than four days of absence from work per month. (*Id.* at 652.)

The ALJ found NP McKay's opinions unpersuasive, noting that they were "poorly supported and inconsistent with the medical evidence of record." (*Id.* at 28.) He observed that NP McKay's narrative statements were vague and "not expressed in vocationally relevant terms." (*Id.*) He then wrote,

> As to the October statement, the signs and symptoms described by Nurse McKay are not documented in her treatment notes. The medical evidence of record shows that the claimant responds well to psychiatric medication management with Nurse McKay and counseling, with generally normal mental status exams at both

> providers. During said treatment, the claimant also reports positive response to care. (9F, 13F, 20F, 26F). These normal objective exam findings and the positive response to treatment support the determination that the claimant experiences no more than moderate limitation secondary to mental health impairments.

(*Id.*) Claimant argued that this discussion was insufficient to comport with either substantial evidence or the regulatory articulation requirements. (DN 11, at PageID # 825-31; DN 16, at PageID # 860-63.)

Supportability relates to "the objective medical evidence and supporting explanations presented by a medical source [ ] to support his or her medical opinion(s)." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The ALJ's discussion evidences that he did not view NP McKay's opinions as supportable because the signs and symptoms she described did not also appear in her treatment notes. (R. at 28.) Claimant argued that this rationale was deficient because it did not address whether the findings contained within NP McKay's opinion supported the opinion itself. (DN 11, at PageID # 825-27; DN 16, at PageID # 860-62.) The Court finds Claimant's argument to impermissibly twist the meaning of both supportability and the ALJ's discussion. NP McKay's opinions, and in particular her October checkbox opinion, were not based on a specific examination of Claimant done for the purposes of offering an opinion as to his functioning. Instead, she wrote a letter or completed a form provided by Claimant's non-attorney representative to encompass her opinion based on her prior treatment of the Claimant, treatment that she stated on the form occurred "[m]onthly." (R. at 647.) Thus, while there are citations to clinical findings and/or signs and symptoms within her opinion, they are not independent findings based on a one-time examination; they are findings based on the whole of her treatment relationship. Given that reality, the Court can find no error in the ALJ referencing NP McKay's treatment notes as part of his consideration of "the objective medical evidence and supporting explanations presented by a medical source [ ] to support his or her medical opinion(s)." 20 C.F.R.

§§ 404.1520c(c)(1), 416.920c(c)(1). Put simply, if the clinical findings in a medical source's report aren't accurate, why should it matter if they support the opinion at issue? And the ALJ's observation that NP McKay's treatment notes were inconsistent with what she documented in her October opinion is correct. For example, NP McKay marked that Claimant had "[d]ifficulty thinking or concentrating," but her treatments notes document consistent observations of intact memory and concentration. (*Compare* R. at 648, *with id.* at 532-35, 600-02, 670-77.) She also marked Claimant as experiencing "[p]aranoid thinking or inappropriate suspiciousness" and "[p]erceptual or thinking disturbances," but during the period at issue, she documented supporting signs and symptoms at only one of twelve sessions with her; the remainder of the time she noted that Claimant's thought process was logical and goal-directed and that his thought content was either appropriate or non-psychotic. (*Compare id.* at 648, with *id.* at 532-35, 600-02, 670-77.) On these facts, the Court finds no error in the ALJ's supportability analysis of NP McKay's opinion.

Consistency relates to the relationship between a medical opinion and "the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). As to consistency, the ALJ generalized that Claimant generally responded well to his medications and counseling, had generally normal mental status exams, and reported positive responses to care, which the ALJ found supported "no more than moderate limitation secondary to mental health impairment"; again, NP McKay had found Claimant had marked impairments. (R. at 28, 651.) Claimant argued that the ALJ's consistency analysis was deficient because the ALJ only considered "normal and unremarkable evidence," ignored "vast swaths of contradictory evidence," and "complete[ly] mischaracterize[ed] [ ] the longitudinal record." (DN 11, at PageID # 827-31; DN 16, at PageID # 862-63.) He cited examples of evidence he believed the ALJ ignored and/or mischaracterized and that, in his view, supported greater limitations. (*Id.*) But he began by

harkening back to evidence of his mental condition in 2020 through January 2022, well before his alleged onset date of May 1, 2022. While he does cite to evidence from within the relevant period, most of the evidence he cited is also cited by the ALJ in his decision, evidencing his consideration of the same. For example, the ALJ notes the same three hospitalizations in his decision that Claimant emphasizes as part of his argument that the ALJ misconstrued the record. (*Compare* DN 11, at PageID # 829-30, *with* R. at 23-25.) But while the Claimant points to the hospitalizations as evidence supporting greater limitations, the ALJ considered this evidence and concluded "that the instances of inpatient treatment for psychiatric stabilization described above are not representative of the claimant's permanent mental health functioning." (R. at 25.) Having reviewed the record and the ALJ's decision, the Court cannot say that the ALJ mischaracterized the record. Instead, the decision reached by the ALJ regarding consistency and the record as a whole appears to be within the "zone of choice" subsumed by the substantial evidence standard. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)) ("The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts."). Both the normal findings emphasized by the ALJ and the abnormal findings emphasized by the Claimant—and in most instances also cited by the ALJ—are part of the record such that it appears the Claimant is merely asking the Court to impermissibly reweigh the evidence. The Court declines to do so. *See Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 253 (6th Cir. 2016) (*citing Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012)). Because the ALJ's generalizations and consistency analysis are supported by substantial evidence, the Court finds no error in the ALJ's consistency analysis of NP McKay's opinion.

**b) Dr. Whitten**

Dr. Whitten conducted a consultative examination of Claimant on April 11, 2023. (R. at 590-98.) Dr. Whitten found Claimant to have a mild limitation on his ability to understand, remember and carry out instructions for simple repetitive and complex tasks and to sustain attention and concentration towards performance of simple repetitive tasks. (*Id.* at 595.) He found Claimant to have a moderate limitation on his ability to sustain attention and concentration towards performance of complex tasks. (*Id.*) Finally, he found Claimant to have a marked limitation on his ability to tolerate stress and pressure of day-to-day employment and respond appropriately to supervisors and coworkers in a work setting. (*Id.*)

The ALJ found Dr. Whitten's opinion "unpersuasive as it [wa]s poorly supported and inconsistent with the medical evidence of record." (*Id.* at 26.) He emphasized that Dr. Whitten's mental status exam findings were largely normal, which he found "inconsistent with the marked limitations described." (*Id.*) He also again emphasized that the medical evidence demonstrated that Claimant responded well to medication and counseling, had normal mental status exams, and reported positive responses to care. (*Id.* at 26-27.) He summarized, "These normal objective exam findings and the positive response to treatment support the determination that the claimant experiences no more than moderate limitation secondary to mental health impairments." (*Id.*) As with NP McKay above, Claimant argued that this discussion was insufficient to comport with the regulatory requirements of 20 C.F.R. §§ 404.1520c, 416.920c.

As to supportability, Claimant argued that the ALJ impermissibly emphasized the normal exam findings, which was a mischaracterization of Dr. Whitten's report. (DN 11, at PageID # 833-34; DN 16, at PageID # 864-66.) He cited to a number of statements that Claimant made to Dr. Whitten during the examination and argued that they contradict the ALJ's findings. (DN 11,

at PageID # 833-34; DN 16, at PageID # 865-66.) He emphasized that the ALJ's discussion "simply d[id] not reflect the severity of [Claimant]'s mental limitations as documented during this evaluation." (DN 16, at PageID # 866.) Much as with NP McKay, the Court finds Claimant's argument to misconstrue the ALJ's analysis. While the ALJ did focus on certain findings to the exclusion of others, weighing the evidence is within the ALJ's purview, and mentioning the evidence he found most significant does not necessarily indicate he ignored other portions of the report. After all, "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) (quoting *Craig v. Apfel,* 212 F.3d 433, 436 (8th Cir. 2000)); *see also Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for his decision to stand."). Claimant proffered no authority to support that an ALJ's supportability analysis is subject to any different rule. While the Court understands why Claimant may have wanted the ALJ to reach a different conclusion, the Court finds no fault with the ALJ's analysis. He noted that he did not believe marked limitations were supported and cited the evidence within Dr. Whitten's report that he believed was inconsistent with the opined marked limitations in tolerating stress and pressure and responding appropriately to supervisors and coworkers. (R. at 595.) The ALJ explained,

> on mental status exam, the claimant was alert and cooperative. He denied current suicidal thoughts. He demonstrated good immediate, recent, and remote memory. Fund of information was congruent with level of education. Simple attention was within the average range. Complex attention was within the low average range. His ability for abstraction appeared very good and congruent with level of education. He appeared to have good insight. Judgment appeared adequate.

(*Id.* at 26.) These findings are accurate and are not outweighed merely because the Claimant pointed to other instances in Dr. Whitten's examination when Claimant reported greater

symptoms. The Court finds the ALJ's analysis supported by substantial evidence and sufficient to comport with the regulatory articulation requirement.

As to consistency, Claimant argued that the ALJ's consistency analysis was insufficient for the same reasons the ALJ's discussion of the consistency factor as to NP McKay was insufficient. (DN 11, at PageID # 835.) Because Claimant merely incorporates his prior argument, the Court incorporates its analysis above.

The Court finds no error in the ALJ's discussion of Dr. Whitten's opinion.

**c) Dr. Fishkoff**

Dr. Fishkoff conducted a consultative examination of Claimant on April 8, 2022, immediately before Claimant's alleged onset date of May 1, 2022. (R. at 486-94.) Dr. Fishkoff opined that Claimant's "ability to tolerate frustration, conform to social standards as well as maintain employment [wa]s moderately to severely impaired." (*Id.* at 492.) Dr. Fishkoff also opined that Claimant's "ability to sustain attention to and to perform simple and repetitive tasks over a 40-hour work week" and "ability to tolerate the stress and pressures associated with day-to-day work activity" were both moderately to severely impaired. (*Id.* at 493.) Like the opinions of NP McKay and Dr. Whitten, the ALJ found Dr. Fishkoff's opinion unpersuasive because he found it "poorly supported and inconsistent with the medical evidence of record." (*Id.* at 26.) Claimant disputed those conclusions. (DN 11, at PageID # 831-33; DN 16, at PageID # 863-64.)

As to supportability, the ALJ wrote, "[T]he claimant displayed a within normal limits ability to understand, retain, and follow instructions. This observation is inconsistent with the severe and marked limitations described." (R. at 26.) Claimant argued in his brief that the ALJ's statement was wrong. (DN 11, at PageID # 831.) However, it is Claimant who is incorrect as even though the ALJ did not use quotation marks, his words are verbatim from Dr. Fishkoff's own

findings in his decision. (R. at 493 ("During this evaluation, his ability to understand, retain and follow instructions was within normal limits.").) Claimant also argued that the ALJ's analysis failed to address other evidence contained within Dr. Fishkoff's opinion that was supportive of her opinion such as the history of symptoms and work history Claimant provided to Dr. Fishkoff. (DN 11, at PageID # 831-32.) While the Commissioner's brief appears to offer several alternative reasons that Dr. Fishkoff's opinion was unsupported by her findings (DN 13, at PageID # 849-50), the Court declines to address these alternatives as they do not relate to the ALJ's own stated reasoning. As to the reasoning the ALJ did provide, the Court finds it sufficient to comport with the articulation requirement. Claimant cited no authority requiring an ALJ's supportability analysis to include a point-by-point evaluation of every facet of the medical source's opinion. Here, the ALJ relied on one piece of evidence that does fairly undercut some of—though admittedly, not all—of Dr. Fishkoff's opinions such as her opinion that Claimant could not sustain attention to perform simple and repetitive tasks. This is sufficient for purposes of supportability because the ALJ's reason for rejecting as unpersuasive the remainder of Dr. Fishkoff's opinion is fairly contained within his consistency analysis.

As to consistency, Claimant argued that the ALJ's consistency analysis was insufficient for the same reasons the ALJ's discussion of the consistency factor as to NP McKay was insufficient. (DN 11, at PageID # 833.) Because Claimant merely incorporates his prior argument, the Court incorporates its analysis above..

The Court finds no error in the ALJ's discussion of Dr. Fishkoff's opinion.

**2. RFC Generally**

The remainder of Claimant's arguments fall under the heading of a general challenge to the ALJ's RFC determination. In the general application of the substantial evidence standard, the

ALJ's analysis admittedly gives the Court some pause. The ALJ places a great deal of emphasis on the normal mental status findings in the record. While, as set forth above, the Court finds that the ALJ has correctly cited and made general characterizations as to these findings, nonetheless the Court is somewhat troubled by the fact that even on the date Claimant was admitted to in-patient hospitalization for attempting suicide, he displayed some of the same "normal" findings on which the ALJ places so much reliance. (R. at 659-61 (documenting mental status findings of good eye contact, cooperative behavior, psychomotor activity within normal limits, normal speech, goal-directed thought processes, reality-oriented thought content, no perceptual disturbance, perception within normal limits, orientation x4, memory within normal limits, intact judgment, concentration within normal limits, and good insight).) Claimant's brief spends a great deal of time and effort documenting the evidence he believes contradicts these "normal" findings to the detriment of the ALJ's decision and reasoning. While this is a case where the Court certainly sees the point that Claimant is making, ultimately, as with Claimant's argument about the ALJ's consistency analysis above, the Court finds that to adopt Claimant's argument would require impermissibly reweighing the evidence. As the Supreme Court has said, the threshold for substantial evidence is "not high." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) ("Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations. And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."). And while the Court may review the record as a whole, including whatever evidence "in the record fairly detracts from its weight," to determine whether an ALJ's decision is supported by substantial evidence, it must do so without "resolv[ing] conflicts in evidence or decid[ing] questions of credibility". *Conner*, 658

F. App'x at 253 (quoting in part *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990) and citing *Ulman*, 693 F.3d at 713). The ALJ's decision here is supported by substantial evidence, and thus, the Court finds that it would be inappropriate for it to inquire as to whether the record would also support the opposite conclusion. *Gayheart*, 710 F.3d at 374.

## III. ORDER

For the reasons set forth above, IT IS HEREBY ORDERED that the final decision of the Commissioner is **AFFIRMED**.

Colin H Lindsay, Magistrate Judge
United States District Court

cc: Counsel of Record

September 15, 2026